**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Derrick Eugene MEANS, also known as Dennis Means, Defendant–Appellant.**

No. 03–5983.

United States Court of Appeals, Sixth Circuit.

April 28, 2004.

Stephen C. Parker, Asst. U.S. Attorney, Cam Towers Jones, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

Derrick Eugene Means, Whiteville, TN, pro se.

Before MARTIN and ROGERS, Circuit Judges; and BELL, District Judge.*

### ORDER

Derrick Eugene Means appeals from his judgment of conviction and sentence for violating the terms of his previous supervised release. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In July 1993, a jury convicted Means for failure to appear in violation of 18 U.S.C. § 3146(a)(1), and social security fraud in violation of 42 U.S.C. § 408(a)(7)(B). He was sentenced to a total of forty-six months of incarceration, plus three years of supervised release. In April 2002, Means began serving his term of supervised release. In March 2003, a Probation Form 12 was filed with the district court alleging that Means had violated the terms of his supervised release. Following an evidentiary hearing, the district court determined that Means had violated the terms of his supervised release and it sentenced him to twenty-four months of im-

* The Honorable Robert Holmes Bell, United States Chief District Judge for the Western District of Michigan, sitting by designation.

prisonment. Means has filed a timely appeal.

On appeal. Means's counsel has filed a motion to withdraw his representation pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and he submits the following issues for review: 1) whether there was sufficient proof to find that Means had violated the terms of his supervised release: and 2) whether Means was entitled to credit for time spent in pre-hearing custody.

Upon review, we conclude that the district court did not abuse its discretion when it revoked Means's supervised release. *See United States v. Cofield*, 233 F.3d 405, 406 (6th Cir.2000). In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release. *Id.*

■ A review of the record clearly reflects that Means violated the terms of his supervised release. During the revocation hearing, the government presented three witnesses whose testimony established that Means had taken a purse from an elderly woman. Sergeant Timothy Sims, with the Memphis Police Department Homicide Bureau, testified that he was off duty when he pulled into a Mapco parking lot and observed the victim (Rebecca Baldwin) tugging on something with another individual who was seated in the driver seat of an automobile. He testified that the victim eventually let go of the item, that the driver put the car in reverse, backed the car up, and that the open driver side door knocked the woman down. He testified that, as the car began to leave the parking lot he got a good look at both the driver and the passenger. He identified Means as the driver of the automobile, and he specifically stated that he had no doubt that Means was the individual whom he had seen. He also testified that he

followed the vehicle, that he radioed the incident in to the dispatcher, and that he followed the automobile until several police cruisers arrived to pull the car over. He stated that the driver refused to pull over, that a high speed chase ensued, and that he learned over the radio that the driver had wrecked his car. In addition, Sergeant Paul French testified that he participated in the high speed chase of the vehicle, and that he observed the passenger of the vehicle toss out what appeared to be a purse and several credit cards. He also testified that the purse and credit cards were recovered and that they belonged to Rebecca Baldwin. Sergeant French was "not sure" of his identification of Means as the driver of the vehicle. Although Ms. Baldwin was unable to identify Means as the perpetrator of the purse snatching, she described how an individual had snatched her purse, attempted to get in a car. and how she attempted to retrieve the purse by struggling with the individual until the passenger threatened to shoot her if she didn't stop twisting the perpetrator's ear. The defense did not introduce any proof during the hearing. Hence, the district court properly concluded that the preponderance of the evidence established that Means had violated the terms of his supervised release.

■ We also conclude that Means was not entitled to credit for time spent in pre-hearing custody. Means argues that he is entitled to federal credit for jail time spent in pre-hearing custody. Here, Means was arrested on August 18, 2002, based on the purse snatching incident. On July 18, 2003, the district court determined that Means had violated the terms of his supervised release and sentenced him to twenty-four months of imprisonment. However, at that point, Means's state charge for robbery was still pending and he had not been sentenced. Hence, he argues that he

is entitled to full federal credit for the time spent in custody prior to his twenty-four month sentence. Means's argument lacks merit. In this case, Means was sentenced on September 26, 2003, in state court to nine years of imprisonment for the offense of robbery. The court granted him 405 days jail credit against his state sentence. Hence, Means was given full credit against his state sentence. As such, he is not entitled to additional credit against his sentence for the supervised release violation. *See United States v. Wilson,* 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

■ Finally, we have reviewed the record in this case and have discovered no error warranting reversal of Means's conviction or sentence. For the reasons stated above, there was ample evidence to support the district court's determination that Means had violated the terms of his supervised release. In addition, the district court properly sentenced Means. This court "will affirm a district court's sentence of imprisonment upon revocation of supervised release if it shows consideration of the relevant statutory factors and is not plainly unreasonable." *United States v. McClellan,* 164 F.3d 308, 309 (6th Cir.1999). The policy statements contained in Chapter Seven of the guidelines are merely advisory and the district court need only consider them before imposing sentence upon revocation of supervised release. *Id.* at 310. In addition to consideration of the policy statements. the district court's sentence must reflect consideration of the factors listed in 18 U.S.C. § 3553. *Id.* The sentencing court need not recite any "magic words" explaining whether and how it considered the policy statements contained in the United States Sentencing Guidelines, or how it weighed the factors set out in § 3553. *Id.* The factors set forth in § 3553 include: 1) the nature of the offense; 2) the need for deterrence and to protect the public; 3) the desire to provide the defendant with needed training, medical care, or other treatment: 4) any established sentencing range; and 5) the avoidance of unwarranted disparities. *Id.* at 309–10.

Here, while the district court did not expressly discuss the Chapter Seven policy statements, it is clear that the district court considered the relevant factors. The court considered the nature of Means's violations, it noted that he had prior federal convictions, and that his criminal history "involves real violence and real danger to society...." The court indicated that society needed to be protected from Means.

Accordingly, we grant counsel's motion to withdraw and affirm the judgment of conviction and sentence. Rule 34(j)(2)(C), Rules of the Sixth Circuit.